IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 22-cr-00264-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

**JAVIER FERNANDO TORRES-FLORES**

    Defendant.

---

**DEFENDANT'S MOTION FOR VARIANCE PURSUANT TO 18 U.S.C. 3553(a)**

---

The Defendant, Javier Fernando Torres-Flores, by and through his attorney Lindsay Brown, and pursuant to 18 U.S.C. Section 3553(a), respectfully moves this Court to sentence him to 10-16 months imprisonment, followed by supervised release. In support of said Motion, the Defendant states as follows:

    **I.    Introduction**

On November 28, 2022, Mr. Torres-Flores plead guilty to Illegal Re-entry After Removal Subsequent to Aggravated Felony Conviction, in violation of 8 U.S.C. § 1326(a) and (b)(2). (ECF Doc. 23). In exchange for his guilty plea, the government agreed to move for a one-level downward departure under the "Fast Track" policy (ECF. Doc. 28), agreed that the Defendant should receive a two-level reduction for acceptance of responsibility under U.S.S.G. §3E1.1(a), and recommend a sentence at the bottom of the Guideline range as calculated by the Court. (ECF Doc. 23 at p.2). In addition, the

government moved for a one-level decrease in the offense level for acceptance of responsibility pursuant to U.S.S.G. §3E1.1(b) (ECF Doc. 29).

The facts underlying the offense are set out in in both the Plea Agreement (ECF Doc. 23) and the Presentence Report ("PSR"). The maximum statutory penalty for a violation of 8 U.S.C. § 1326(a) and (b)(2) is not more than 20 years imprisonment; not more than a $250,000 fine, or both; not more than 3 years supervised release; and a $100 special assessment fee.

For the reasons set forth below, Mr. Torres-Flores respectfully urges this Court to impose a below-Guideline sentence of 10-16 months imprisonment.

The defense filed its response to the PSR, in which the defendant objected to the application of an eight-point increase to the offense level under §2L1.2(b)(3)(B), and application of three criminal history points to a prior conviction when the Defendant was 17 years-old under §4A1.2(d)(1). (ECF Doc. 26). The Defendant also filed a Motion for Downward Departure, in which he argued for a decrease in the criminal history score pursuant to §4A1.3(b) resulting in the application of a Criminal History Category III. (ECF. Doc. 33).

If the Court agrees that Mr. Torres-Flores's prior conviction when he was 17 years-old should not be used to enhance his offense level by eight points pursuant to §2L1.2(b)(3)(B) and also agrees either that the same prior should not count for three points under §4A1.2(d)(1) or that a downward departure pursuant to §4A1.3(b) and application of a Criminal History Category III is more appropriate, Mr. Torres-Flores's

guideline range with a Criminal History Category III and Offense Level 10 would be 10-16 months.[1]

If the Court disagrees with the Defendant's analysis, it can still sentence the Defendant to between 10-16 months imprisonment by way of a variance. As this Court is aware, a "variant" sentence results when a "a court enhances or detracts from the recommended Guidelines range through the application of §3553(a) factors." *United States v. Atencio*, 476 F.3d 1099, 1101 n.1 (10th Cir. 2007), overruled in part on other grounds by *Irizarry v. United States*, 533 U.S. 708 (2008). The Defendant and his counsel respectfully suggest a sentence of 10-16 months imprisonment followed by supervised release with conditions the court deems just.

## II.     The Applicable Sentencing Standard

Following *United States v. Booker*, 543 U.S. 220 (2005), a sentencing court must impose a sentence in accordance with Title 18 U.S.C. Section 3553(a) and should no longer presume a sentence calculated pursuant to the Sentencing Guidelines is appropriate.  In the post-*Booker* world, the correctly calculated Guidelines range is but one factor for the Court to consider in imposing a sentence.  Most significantly, the Court must impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of punishment set forth in Title 18 U.S.C. 3553(a)(2). *See United States v. Foreman*, 436 F.3d 638, 644 n. 1 (6th Cir. 2006) ("the district court's job is not to impose a 'reasonable' sentence [but] to impose 'a sentence sufficient, but not greater

---

[1] An Offense Level of 10 would result from the Court applying a six-point increase to the Base Offense Level pursuant to §2L1.2(b)(2)(C) – for a total of 14 -- a two-point decrease pursuant to §3E1.1(a) – for a total of 12 – a one-level decrease pursuant to §3E1.1(b) – for a total of 11 – and a one-level decrease pursuant to the People's Motion for Downward Departure under §5K3.1 – for a total of 10.

3

than necessary, to comply with the purposes' of section 3553(a)(2)"); *United States v. Tucker*, 473 F.3d 556, 561 (4th Cir. 2007) (same); *United States v. Willis*, 479 F.Supp.2d 927, 929 (E.D. Wis. 2007) (explaining that "the so-called parsimony provision…directs the court to impose the minimum term necessary to comply with the statutory goals of sentencing").  Those purposes include the need "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence to criminal conduct"; and "to protect the public from further crimes of the defendant." Title 18 U.S.C. 3553(a)(2)(A), (B) and (C).

To the extent that the Defendant is effectively arguing for a variant sentence, such an argument allows a sentencing court not only to consider the so-called Section 3553(a) factors, but also factors that may be disfavored by the Sentencing Guidelines, like age and criminal record. *See United States v. Huckins*, 529 F.3d 1312, 1318-19 (10th Cir. 2008) (citing *United States v. Munoz-Nava*, 524 F.3d 1137, 1148 & n. 6 (10th Cir. 2008); *Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586, 602 (2007), and *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558, 575 (2007)).

In addition to the presumptive Guidelines range, sentencing courts must also consider, pursuant to Title 18 U.S.C. 3553(a), a number of other factors, including "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the kinds of sentences available"; and the Guidelines. *Id*. at 3553(a)(1), (3) and (4).  Under this sentencing regime, a court should consider all the relevant sentencing factors, giving no more weight to one factor than to any other factor.  The focus of the post-*Booker* sentencing scheme, therefore, is a sentence based on the

whole person before the court, rather than upon a mechanistic application of oftentimes two-dimensional and limited sentencing factors as embodied and codified in the Guidelines.

In the present case, as set forth below, Mr. Torres-Flores respectfully submits that full consideration of all the factors outlined in Section 3553(a), including the fundamental precept that the sentence be sufficient, but not greater than necessary to serve the purpose of punishment, makes clear that a sentence of 10-16 months is warranted.

**III.     Application and Analysis Pursuant to Title 18 U.S.C. § 3553**

Pursuant to Title 18 U.S.C. 3553(a), the Court must consider the Defendant's "history and characteristics" in fashioning an appropriate sentence. In addition, it must, among other factors, consider the "need for the sentence imposed…to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct;  to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

The Defendant's personal history is laid out in the PSR at pp. 11-16. It goes without saying that the Defendant's childhood represents a world and lifestyle that is unfathomable to almost anyone fortunate enough to be born in the United States. He lived in a mud home without running water cared for by a widowed, uneducated mother attempting to raise four children while working in a market stall. Unable to subsist on what she earned, her children had to attempt to get money in order to be able to eat.

Within a year of his father's death when he was only 11 years old, Mr. Torres-Flores began to be aggressively and violently recruited by gangs. After surviving this danger and squalor to age 16, he succumbed to the lure presented by the idea of life in the United States.

It is, of course, hard enough even for many teenagers who grow up in the United States to avoid getting into criminal trouble. Mr. Torres-Flores, however, arrived here and was faced with how to provide for himself with no way to be able to work legally. As even his mere presence in the U.S. and acquisition of a "legal" job were criminal, it cannot be a surprise to anyone that he wound up involved in criminal activity in order to provide for himself and resulting from the influence of the people he found himself surrounded by on the streets. He continues to pay an especially severe price not only for that, but for the State of Texas' treatment of all 17-year-olds as adults. Texas Family Code Section 51.02. As noted in his Motion for Downward Departure, Texas has the dubious distinction of being one of only three states that automatically prosecutes children in this unduly harsh way. (ECF Doc. 33 at p. 3). Since 2011, eleven states have passed legislation raising the age, but Wisconsin, Georgia, and Texas continue to lag behind.[2]

It is worth noting that of those states that increased the age of adult prosecution to 18 in recent years, some common reasons include: children housed in adult jails or prisons are nine times more likely to commit suicide than their counterparts in juvenile

---

[2] *See "Wisconsin Should Stop Prosecuting 17-year-olds as Adults."* ACLU-WI Blog, May 24, 2021, located at: https://www.aclu-wi.org/en/news/blog-wisconsin-should-stop-prosecuting-17-year-olds-adults (last accessed February 8, 2023).

facilities[3]; they are five times more likely to be sexually assaulted[4]; they are thirty-four times more likely to recidivate.[5] From this perspective, and considering the totality of Mr. Torres-Flores's childhood circumstances, that he stands before the court on his fourth felony conviction is unfortunate -- yet unsurprising. If his prior offenses in Texas (comprised of two separate but identical felonies on the same date of offense), committed when he was 17, had been charged in juvenile court, the impact on and analysis in this case would be very different.

      The Defendant acknowledges that his criminal history extends beyond the period recognized as being within the timeframe of his adolescence. His conviction in 2017 bears no similar excuse. While the facts of that case imply that he was a minor player relative to co-defendants (PSR at pp. 8-9), he did not contest his involvement and pled guilty. As part of his conditions of supervised release, Mr. Torres-Flores was ordered not to reenter the country illegally. He argues that he intended to comply with that condition but was once again faced with violence and death in his home country of Honduras, and in the area to which he originally fled in Mexico. (PSR at p. 12). By way of example, Mr. Torres-Flores explained that upon his return to Honduras in 2018, after which time he fled to Sonora, Mexico, he learned that the gangs in Honduras began threatening his mother in order to get to him. Specifically, a severed human head and body were left outside of her home in what Mr. Torres-Flores and his mother believed

---

[3] Equal Justice Initiative, *Children in Adult Prison*, located at: https://eji.org/issues/children-in-prison (last accessed February 8, 2023).
[4] 42 U.S.C.A. 15601 (2003) (congressional findings in support of Prison Rape Elimination Act)
[5] Lahey, Jessica. *The Steep Cost of Keeping Children in Adult Prisons*. The Atlantic, January 8, 2016. Located at: https://www.theatlantic.com/education/archive/2016/01/the-cost-of-keeping-juveniles-in-adult-prisons/423201 (last accessed February 8, 2023) (defining children as those under the age of 18).

were a specific threat against his life. Mr. Torres-Flores advised that he saw his choices as being between death and returning to the United States. He chose the latter.

It is highly unlikely that circumstances in Mr. Torres-Flores's hometown in Honduras have resolved or changed such that he could return home safely and have no reason to return to the United States. However, he and his girlfriend Alexis Alvarado have developed a plan that they believe would allow Mr. Torres-Flores, once released and deported, to comply with the Orders of the Court and keep himself and his family safe. (*See* **Exhibits B and I**). The plan entails residing with Alexis's aunt Olivia in Ciudad Juarez, Chihuahua in Mexico, where they believe they would be safe from the forces otherwise faced in Honduras.

Additionally for the Court's consideration in assessing this request for a variant sentence are the statements of Mr. Torres-Flores's friends and family, many of whom sent letters for the Court's review:

1. Letter from Macy Annabel Torres-Flores, the Defendant's mother (**Exhibit A**);
2. Letter from Alexis Alvarado, the Defendant's girlfriend (**Exhibit B**);
3. Letter from Isidro Serrano, the Defendant's boss in Denver (**Exhibit C**);
4. Letter from Vilma Suyapa Hernandez Torres, the Defendant's former teacher in Honduras (**Exhibit D**);
5. Letter from Yeimi Velasquez, the Defendant's childhood friend (**Exhibit E**);
6. Letter from Edwin Roberto Banegas López, the Defendant's childhood friend (**Exhibit F**);
7. Letter from Mario Alonso Luque Vasquez, Parish Priest in Defendant's hometown (**Exhibit G**);

8. Letter from Christian Torres, the Defendant's brother (**Exhibit H**);

9. Letter from Olivia Martinez, the Defendant's girlfriend's aunt (**Exhibit I**).

An informal translation of those letters presented in Spanish is attached as **Exhibit J**.[6]

### IV.   Conclusion

Despite the circumstances that brought Mr. Torres-Flores back to the United States and before this Court, he accepts responsibility for his decisions and understands his actions violated the law. He understands that is not allowed back in the United States without proper authority, and the choice to return absent that authority will result in an increasingly more severe sentence. That is a situation he sincerely wants to avoid in the future.

As described herein, the objectives of Title 18 U.S.C. 3553(a) have been met, and a sentence of 10-16 months and supervised release will adequately reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. *See* 18 U.S.C. 3553(a)(2)(i). In addition, such a sentence will adequately deter criminal conduct, and protect the public from further crimes of the defendant. *Id*. at (a)(2)(ii), (iii). Finally, such a sentence is sufficient, but not greater than necessary to accomplish these goals.

WHEREFORE, considering all the relevant factors enumerated by 18 U.S.C. §3553(a), Mr. Torres-Flores respectfully requests that the Court impose a sentence of 10-16 months imprisonment followed by a term of supervised release.

DATED this 10th day of February 2023.

---

[6] These letters were translated by the Defendant's girlfriend for the Court's and counsel's convenience and are not intended to be considered certified or otherwise official translations.

Respectfully submitted,

*s/ Lindsay Brown*

Lindsay Brown, Atty Reg No. 41212
2nd-Chair, LLC
1600 Stout Street Suite 1400
Denver, CO 80202
Telephone: 303-868-5170
LindsayR@2nd-chair.com

10

# **UNITED STATES DISTRICT COURT**
# **FOR THE DISTRICT OF COLORADO**
# **CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2023, I filed the foregoing Notice of Disposition with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the court and following parties:

AUSA Albert Buchman
United States Attorney's Office – District of Colorado

                                                                                    s/ Lindsay Brown
                                                                                    Lindsay Brown
                                                                                    2nd-Chair, LLC
                                                                                    Denver, Colorado